## Akers' Executors *vs.* Akers and others.

1. The residuary clause, after giving all the residue of the real and personal estate upon the death of the testator's wife, to his six children by name, equally to be divided between them, and to their heirs and assigns forever, concludes with these words: " But it is my will and desire that the amount so bequeathed to my daughters above named shall be so secured to them that they only receive the benefit on the portion so bequeathed to them, and that their receipts be requisite to draw the amount of interest due them on the amount bequeathed to them, interest payable half yearly ; at their decease the property so bequeathed to go to their children or legal heirs." *Held*, that the daughters were not entitled to have the principal paid to them, but that the principal of each daughter's share must be invested during her life, and the interest only paid to her half yearly; and that at her death the principal goes to her heirs, and for that end must be retained and kept by the executors.

2. " Children " will not be construed as synonymous with "heirs," when it would conflict with testator's intention. That intention will be effected by applying the word " children " to the personal property, and the word " heirs " to the lands.

This cause came on for hearing upon bill and answer. The suit was brought by the executors to have a construction of the will of their testator, and for directions in the execution of their trust. The defendants claim that they are entitled to have the principal of the residue of the personal estate paid over to them immediately. The executors have doubts of this, and are advised that the daughters of the testator are entitled only to the interest on their respective shares, and that the principal must be retained by the executors and paid at the death of each daughter to her children. The will is dated February 2d, 1856. The sixth clause of the will on which the question arises, after giving all the residue of his real and personal estate, upon the death of his wife, to his six children by name, equally to be divided between them, and to their heirs and assigns forever, concludes with these words : " But it is my will and desire that the amount so bequeathed to my daughters above named, shall be so secured to them that they only receive the benefit on the portion so bequeathed to them, and that their receipts be requisite to draw the amount of interest due them on the amount bequeathed to them, interest payable half yearly ; at their decease, the property so bequeathed to go to their children or legal heirs." The residue of the personal estate was ascertained and settled by the Orphans Court of the county of Essex, at the allowance of the final account of the executors, on the 7th of March, 1871, to be $73,615.10. One of the sons having died in the lifetime of the testator, his share went to the other five by a provision in the will, and each of the three daughters is entitled to the one-fifth of this residue. None of the daughters had children at the making of the will.

Mr. J. W. Taylor, for complainants.

Mr. W. S. Whitehead, for defendants.

THE CHANCELLOR.

This will is inartificially drawn. The draftsman must have been ignorant of the rules of law. But he has drawn it

so as to leave little, if any, doubt as to the intention of the testator. No one, I think, can read the clause in question without seeing that the testator intended that the principal of each daughter's share should be invested during her life, and the interest only paid to her half yearly, and that on her own receipt; and that at her death the principal should go to her heirs, and for that end should be retained and kept from the daughters by the executors.

This intention, like any intention of a testator clearly shown by the language of his will, must be followed in the construction and execution of the will, unless it is contrary to the settled rules of law. The law will not permit a testator, however clearly he intends it, to create a perpetuity or to entail personal estate.

It is contended that this gift to each daughter, and at her death to her children, creates an estate tail in her. One of the resolutions in *Wild's case*, 6 *Rep.* 17, is relied on for this. I think counsel has misapprehended the resolution relied on, and another resolution in that case is the other way. The devise in that case was to Rowland Wild and his wife, and after their decease to their children.

The resolution relied on for the defendants is this : " If A devises land to B and his children or issues, and he hath not any issue at the time of the devise, the same is an estate in tail ; for the intent of the devisor is manifest and certain that his children or issues should take, and as immediate devisees they cannot take, because they are not *in rerum natura*, and by way of remainder they cannot take, for that was not his intent, therefore such words shall be taken as words of limitation as much as children or issue of his body ;" and in like case it had been adjudged an estate tail. A second resolution is this : " If a man devises to A and his children or issue, and he then have issue, then his express intent may take effect according to the rule of the common law ;" and therefore in such case they shall have but a joint estate for life. The third resolution was this : " That if a man, as in the case at bar, devises land to husband and wife, and after their decease to their children,

or the remainder to their children, in this case although they have not any child at the time, yet every child which they shall have after, may take by way of remainder, according to the rule of the law ; for his intent appears that their children should not take immediately, but after the decease of Rowland and his wife."

The second resolution only applies when the gift is to a man and his children. If such children were then in being they would take jointly with their father. But if they were not in being, the law, to give the devise effect, construes children like heirs, a word of limitation. But it is carefully, in the other two resolutions, distinguished from the cases where the gift was to the children *after the decease* of the parent, as in this case. In Wild's case the gift to children was after their parents' decease. It was held that Wild and his wife had only an estate for life, and that their children took only an estate for life, and not an estate tail. And by the third resolution, which is upon a proposed case just like the present, where the children were born after the will, it went to every child born afterwards by way of remainder, and not to the heir-at-law. All the other cases relied on by counsel in support of this position are upon devises like that supposed in the first resolution in Wild's case—that is, devises to A and his children—and not like the devise in this case, or the devise to Wild and his wife for life, and after their decease to their children. The resolutions in Wild's case would make this gift to each daughter for her life, and at her death to her children for life only ; in this state, by statute, the children take the fee. This would apply to both real and personal property.

It is further insisted that the word heirs, in the gift over to children or heirs, being a word of inheritance, must create an estate in fee in the lands ; and in the personal estate coupled and mixed up with it in the same gift, must make the gift in like manner absolute.

I will assume the position taken by Sir John Leach in *Malcolm* v. *Taylor*, 2 *Russ. & Myl.* 416, in a judgment after-

wards affirmed by Lord Brougham on a re-hearing, that "it is to be supposed where real and personal estate are given together, that the testatrix had the same intention with respect to the funded property and the real estate.

In real estate, the words used in this will, (if the word children is expunged or considered as swallowed up in the word heirs in the gift over,) would not give a fee in the lands. It would have had that effect under the rule in Shelley's case; but since the act of 1820, incorporated in the present act of descent as section ten, the rule in Shelley's case has been abolished in this state, so far as devises are concerned. In 1843, a gift to a person for life, and at her death to her heirs, would give a life estate only to the devisee, and at her death it would go to her children in fee; and this in the case of *Den d Hopper* v. *Demarest,* 1 *Zab.* 525, was determined to be a vested estate in the children. The words of the fourth clause, if they had been used for the personal estate only, would have given the daughter only an estate for life, and the limitation over would have taken effect, not being too remote for the limitation of personal estate. If, because real estate is included in the same gift, this must have the same construction as to the personal as to the real estate, the gift is for life, with limitation over at the death of the life tenant to her children—a limitation allowed by the rules of law. This is the view taken in 2 *Jarman on Wills* 506, of the effect of the English statute of 1837, which declares that in wills of persons dying after that, the words "dying without issue" shall be taken to mean dying without issue living at the death of the first taker. These words, in a devise over, had been held before to create an estate tail in lands by implication. And under the rule that words which as to lands would create an estate tail, when applied to personal estate would make the gift absolute, because it could not be entailed—these words, in a limitation over of personal estate, made the first bequest absolute. The learned author remarks that "the statute will, when applied to personalty, operate to restrain such words from passing the absolute

interest, and also to bring within the compass of the rule against perpetuities, the ulterior bequest depending on such contingency."

The act of 1820 had the same effect upon devises of real estate here that the English statute of 1837 did there, and should have the same reflected effect upon gifts of personal estate in changing the application of the abrogated rules to them.

The intention of the testator as expressed is, above all things, the guide of the courts in the construction of the will, and the courts will not be backward in taking advantage of anything that abrogates an iron rule of law preventing the giving effect to such intention.

But there is no reason for holding that in this case the word " children " is to be taken as synonymous with heirs, or that it is swallowed up by it. A more reasonable construction would be to give effect by applying the word " children " to the personal property, and the word " heirs " to the lands, according to the rule, *reddendo singula singulis.* The word " heirs," when applied to personal property alone, is often held to mean the legatees in the will, and when applied to both real and personal estate, to mean both legatees and devisees, in accordance with this rule; and if it had been the only word here, this meaning could be given to it. But where both are used, each should be given its proper effect, by applying it to the estate to which its settled meaning refers.

Either view brings to the same conclusion. The daughters are entitled to a life estate only in the personalty. It must be invested by the executors, and the interest of each daughter's share paid to her half yearly in person.